UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOYCE MARIE SIMMONS,<br><br>    Plaintiff,<br><br>v.<br><br>T. MISCHEL, et al.,<br><br>    Defendants. | Case No. 18-cv-02193-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING LEAVE TO FILE AMENDED COMPLAINT**<br><br>Re: Dkt. No. 29 |

In this action, *pro se* plaintiff Joyce Marie Simmons, a federal prisoner confined at the Federal Correctional Institution in Dublin, California ("FCI-Dublin"), claims that several prison officials have violated her constitutional rights. Dkt. No. 1. Ms. Simmons filed a verified complaint asserting the following claims: (1) use of excessive force and failure to protect her from excessive force, in violation of the Eighth Amendment, (2) placement in administrative detention in retaliation for filing a lawsuit, in violation of the First Amendment, and (3) denial of due process of law in connection with her administrative detention, in violation of the Fifth Amendment.[1] *See id.* at ECF p.13. Ms. Simmons asserts all of these claims against all defendants. She seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages against all defendants. *Id.* All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 2, 26.

---

[1] Ms. Simmons relies on the Fourteenth Amendment, which applies only to the states. The Court construes this claim as a claim for violation of the Fifth Amendment, which applies to the federal government.

Defendants Tamara Mischel, Kimberly Luke, Ashley Phillips, Gordon Castillo, Timothy Brosnan, and W.Z. Jenkins, II move to dismiss all of Ms. Simmons's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that she cannot state a claim for damages against any defendant, as such a claim would constitute an unwarranted extension of the *Bivens* remedy[2] under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Dkt. No. 29. Alternatively, defendants move for summary judgment on the following grounds: (1) Ms. Simmons failed to exhaust her administrative remedies; (2) defendants did not violate Ms. Simmons's constitutional rights; and (3) defendants are entitled to qualified immunity. *Id.* For the reasons discussed below, the Court grants defendants' summary judgment motion based on Ms. Simmons' failure to exhaust her administrative remedies. *See infra* Section III.A. As such, the Court need not address defendants' Rule 12(b)(6) motion.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted[3]:

### A. Parties

Ms. Simmons is serving a prison sentence following her conviction on six counts of preparing false tax returns in violation of 26 U.S.C. § 7206(2). Dkt. No. 29-1 ¶ 2, Attach. 1. Ms. Simmons has been incarcerated at FCI-Dublin since October 24, 2016 and is expected to complete her sentence in February 2025. *Id.* ¶ 4, Attach. 3. FCI-Dublin is a low-security Federal Correctional Institution, with an adjacent, minimum-security Satellite Prison Camp ("SPC"), located in Dublin, California. Dkt. No. 29-14 ¶ 2. FCI-Dublin houses over 1,200 female prisoners. *Id.* Approximately 200 of these prisoners are housed at the minimum-security SPC. *Id.* Ms. Simmons was housed at the SPC from October 24, 2016 to November 15, 2017, when she

---

[2] Although Ms. Simmons filed her complaint as an action under 42 U.S.C. § 1983, the Court has construed the complaint as an action arising under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Dkt. No. 28 at 2.

[3] As Ms. Simmons has filed a verified complaint, the Court may rely on statements of fact in the complaint that she is competent to assert as if they were made by declaration. *Schroeder v. McDonald*, 55 F.3d 545, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56 [if it is] based on personal knowledge and set[s] forth specific facts admissible in evidence.") (internal citation omitted).

2

1 was transferred to the low-security facilities of FCI-Dublin. *Id.* ¶ 10.

Defendant Kimberly Luke is a Unit Manager at FCI-Dublin. *Id.* ¶ 1. She was the Unit Manager at the SPC from July 2016 to June 2018 during the time Ms. Simmons was housed there. *Id.* ¶ 2.

Defendant Ashley Phillips is a Correctional Officer at FCI-Dublin. Dkt. No. 29-20 ¶ 1. She was the Unit Officer for the SPC from June 11, 2017 to September 9, 2017 during a portion of the time Ms. Simmons was housed there. *Id.*

Defendant Gordon Castillo was the Captain at FCI-Dublin from August 2014 to June 2018. Dkt. No. 29-24 ¶ 1.

Defendant Timothy Brosnan was a Lieutenant at FCI-Dublin from approximately July 2016 to July 2018. *See* Dkt. No. 29-26 ¶ 1. He worked at the Special Housing Unit ("SHU") at FCI-Dublin for approximately one year during that time. *Id.*

Defendant Tamara Mischel is the Associate Warden at FCI-Dublin, a position she has held since March 2017. Dkt. No. 29-29 ¶ 1. For some period of time, including during the fall of 2017, Ms. Mischel served as Acting Warden of FCI-Dublin. *Id.* ¶ 3.

Defendant W.Z. Jenkins, II is the Warden of FCI-Dublin, a position he has held since November 6, 2017. Dkt. No. 29-31 ¶ 1.

**B.      Cell Door Incident on August 15, 2017 and Claimed Knee Injury**

As Unit Officer at the SPC, Ms. Phillips was responsible for direct supervision of prisoners, including Ms. Simmons. Dkt. No. 1 at ECF p.7; Dkt. No. 29-20 ¶ 2. Ms. Phillips's responsibilities included supervision of prisoner work assignments. Dkt. No. 29-20 ¶ 2.

On August 15, 2017, Ms. Phillips paged Ms. Simmons to the Officer's Station at 7:10 a.m. Dkt. No. 1 at ECF p.7. Ms. Simmons says that Ms. Phillips assigned her extra duties, and that Ms. Simmons objected to that assignment as it was Ms. Simmons's day off of work. *Id.* Ms. Simmons says that Ms. Phillips "became irate and immediately ordered me to leave her sight." *Id.* Ms. Luke, who observed the interaction but does not recall specific details, calls it a "disagreement" and denies that Ms. Phillips acted in a threatening or abusive manner toward Ms. Simmons. Dkt. No. 29-14 ¶ 5. Ms. Phillips offers no testimony about the interaction. *See* Dkt. No. 29-20.

3

Shortly after her dispute with Ms. Phillips at the Officer's Station, Ms. Simmons returned to her cell. Dkt. No. 1 at ECF p.8. Ms. Simmons says that Ms. Phillips kicked the cell door open and struck Ms. Simmons, who was seated on the toilet just inside the door at that time, on her right knee. *Id.* Ms. Simmons says that Ms. Phillips knew she was in her cell and seated on the toilet because Ms. Simmons had placed a piece of paper on the door window indicating that the cell was occupied and the toilet was in use. *Id.*; Dkt. No. 35 at 3; Dkt. No. 29-12[4] at 49. Ms. Simmons also says that when she called out that her knee had been struck, Ms. Phillips laughed at her and said, "I don't give a f—k. I have the f—king right to come in whenever I want. Now what about that." Dkt. No. 1 at ECF p.8

Ms. Phillips describes the event differently. She says that she knocked on Ms. Simmons's door, but there was no response, so she opened it to place a roll of toilet paper inside. Dkt. No. 29-20 ¶ 3. Ms. Phillips denies kicking the cell door and says she did not know Ms. Simmons was in her cell. *Id.* ¶ 4. Ms. Phillips also says she did not see the door strike Ms. Simmons and that Ms. Simmons did not tell her that it did. *Id.* Ms. Phillips acknowledges that she "shouted in surprise," but does not say what words she shouted. *Id.* ¶ 3. She does not deny that she used the words Ms. Simmons recounts. *Id.*

Ms. Simmons reported the cell door incident to a case manager named "Chavez" and a second shift officer named "Vasquez" on August 15, 2017, but she did not seek medical attention that day. Dkt. No. 1 at ECF p.9. According to Ms. Simmons, no medical attention was available to prisoners on the following day, August 16, 2017 (a Wednesday). *Id.* On the morning of August 17, 2017, Ms. Simmons went to the prison's health services department, complaining of pain in her right knee. *Id.*; Dkt. No. 29-12 at 49. The medical provider's record indicates that

---

[4] Defendants filed an administrative motion to seal Attachment 11 to the declaration of Jacquelyn Herrera (Dkt. No. 29-12) in its entirety. Dkt. No. 31. However, defendants did not file an unredacted version of Attachment 11 on the docket as required by Civil Local Rule 79-5, but instead provided the Court only with a physical copy of Attachment 11. The Court addresses defendants' administrative motion by a separate concurrent order, in which the Court directs defendants to file an unredacted version of Attachment 11 in compliance with Civil Local Rule 79-5. The Court cites her to the public version of Attachment 11 that defendants filed with their original motion.

4

[REDACTED] Dkt. No. 29-12 at 49. [REDACTED]

*Id.* Ms. Simmons was [REDACTED] and advised to use over-the-counter pain/inflammation medication and to do knee exercises. *Id.*; Dkt. No. 1 at ECF p.9.

Later on August 17, 2017, Ms. Simmons sent an electronic message to Ms. Luke, the Unit Manager, in which she referred to the dispute with Ms. Phillips on August 15, 2017 and described the cell door incident that followed. Dkt. No. 29-15 ¶ 5, Attach. 1. Because she was not Ms. Phillips's supervisor, Ms. Luke forwarded the message to Captain Castillo and notified Ms. Simmons that she had done so. *Id.* ¶ 6, Attach. 1. On August 19, 2017, Mr. Castillo forwarded Ms. Luke's message to two lieutenants for further review and investigation of the incident. Dkt. No. 29-24 ¶ 4, Attach. 1. The record does not reflect the outcome of that review and investigation and what action, if any, was taken as a result.

Defendants submit medical records showing that on June 15, 2017, approximately two months *before* the cell door incident, [REDACTED]. Dkt. 29-12 at 54. [REDACTED]. *Id.* at 1–40.

### C. Ms. Simmons's Placement in SHU and Transfer to FCI-Dublin

Beginning in September 2017, other prisoners at the SPC reported to Ms. Luke that Ms. Simmons was bullying them, coming into their cells to threaten them, and causing disruption within the SPC. Dkt. No. 29-14 ¶ 8, Attach. 2. Ms. Luke, in consultation with her supervisor, decided to place Ms. Simmons into administrative detention in the SHU to avoid conflicts with other prisoners while they investigated the complaints against Ms. Simmons. *Id.* Ms. Simmons

5

1  was moved to the SHU on October 11, 2017. *Id.*, Attach. 3.

2  On October 25, 2017, Ms. Luke recommended that Ms. Simmons be transferred from the minimum-security SPC to a low-security facility. Dkt. No. 29-14 ¶ 9, Attach. 4. As reflected in the transfer request, Ms. Luke recommended transfer for the following reasons:

> Inmate Simmons has not demonstrated appropriate interactions with staff and peers since she arrived to [SPC] Dublin. She has been counseled multiple times by staff in regards to her negative interactions with peers in her unit. Specifically, she bullied vulnerable inmates over the use of common areas such as the TV room, laundry room, and lobby areas. Consequently, she is not appropriate for placement at a minimum security institution. As such, the Unit Team is requesting the Greater Security Management Variable be applied and she be transferred to a low security level institution other than FCI Dublin, due to her familiarity of the institutional grounds.

*Id.*

Associate Warden Tamara Mischel, who was then serving as Acting Warden, reviewed and approved the transfer request on October 25, 2017. *Id.* ¶ 9; Dkt. No. 29-29 ¶ 3, Attach. 1. Thereafter, the Designation and Sentence Computation Center also approved the transfer. Dkt. No. 29-14 ¶ 10. On November 13, 2017, Warden W.Z. Jenkins, II, the new Warden of FCI-Dublin, signed the Transfer Order. *Id.* ¶ 10, Attach. 5; Dkt. No. 29-31 ¶ 5, Attach. 1. On November 15, 2017, Ms. Simmons was transferred from the SHU to the low-security facility at FCI-Dublin.[5] Dkt. No. 29-14 ¶ 10, Attach. 3.

Ms. Simmons was in the SHU from October 11, 2017 to November 15, 2017. *Id.* ¶ 10, Attach. 3. As the SHU Lieutenant during that time, Timothy Brosnan was responsible for ensuring that each prisoner received appropriate attention and care while in the SHU. Dkt. No. 29-16 ¶ 4. Mr. Brosnan was required to conduct periodic record reviews and in-person reviews to ensure each prisoner's placement in the SHU remained appropriate. *Id.*

Mr. Brosnan does not recall any specific interactions with Ms. Simmons, although he does recall, generally, that she was in the SHU and that he spoke with her at her cell about her SHU placement. *Id.* Consistent with what he says is his standard practice, the prison's records reflect

---

[5] The record does not reflect why, contrary to the initial recommendation, Ms. Simmons was transferred to the low-security facility at FCI-Dublin instead of to a different low-security facility.

6

that Mr. Brosnan reviewed Ms. Simmons's SHU placement on October 17, 23, 30 and November 5, 2017. *Id.* ¶¶ 5-6, Attach. 2. Mr. Brosnan does not explain how these records were created or who created them; he says only that they are "maintained and used by the Bureau of Prisons in the ordinary course of its operations." *Id.* ¶ 2.

Ms. Simmons says that while she was in the SHU, no executive staff member, including Mr. Brosnan, came to visit or speak with her about her placement in the SHU. Dkt. No. 1 at ECF p.11; Dkt. No. 35 at 7. Ms. Simmons relies on the supporting declarations of two fellow SHU prisoners, both of whom say that they never saw Mr. Brosnan or any other executive staff visit Ms. Simmons. Dkt. No. 35, Ex. H. Ms. Simmons says that on November 11, 2017, while still in the SHU, she sent Mr. Castillo a written request seeking information about why she was placed in the SHU and why she had not yet been advised of the reasons for her detention. *See* Dkt No. 1 at ECF p.12, Ex. K. She says that she sent an electronic message to Mr. Castillo on November 16, 2017 (after she was transferred to the low-security facility) containing the same request. Dkt No. 35, Ex. G. Ms. Simmons says she never received a response to either request. *See* Dkt. No. 1 at ECF p.12, Ex. K; Dkt. No. 35 at 7–8. Mr. Castillo says he has no recollection of receiving these requests from Ms. Simmons, although he does not dispute that the electronic message was sent to his correct email address. Dkt. No. 29-24 ¶ 5. Defendants cite no evidence that Ms. Simmons was ever given a written explanation for her placement in the SHU prior to or during her time in administrative detention.

**D.  Administrative Remedy Requests**

Since arriving at FCI-Dublin on October 24, 2016, defendants say that Ms. Simmons has filed 16 administrative remedy requests or appeals. Dkt. No. 29-1 ¶ 5, Attachs. 5-12. Defendants assert—and Ms. Simmons does not dispute—that three of those requests possibly concern matters at issue in this action:

1. Remedy ID #908715-F1, submitted on July 6, 2017, regarding Ms. Simmons's allegations that Officer Phillips harassed her about her work assignments;

2. Remedy ID #919931-F1, submitted on October 13, 2017, regarding Ms. Simmons's request that no inmate be shown favoritism or preference; and

7

3. Remedy ID #920132-F1, submitted on October 24, 2017, regarding Ms. Simmons's allegations that Unit Manager Luke discriminated and retaliated against her in conducting an investigation.

*Id.* ¶ 11, Attachs. 5, 8, 9. The Warden responded to each of these requests, and defendants assert—and Ms. Simmons again does not dispute—that Ms. Simmons did not appeal the Warden's responses. *Id.* ¶ 11.

### E. Administrative Tort Claim

On November 30, 2017, Ms. Simmons sent an administrative tort claim for injury and damages to the Western Regional Office of the Bureau of Prisons, which the Western Regional Office acknowledged by letter dated December 7, 2017. *Id.* ¶ 14, Attach. 12. In her administrative claim, Ms. Simmons recounted the cell door incident that occurred on August 15, 2017. She claimed that her injury was "constant sharp excruciating pain of right knee/leg" and asked for $50,000 in compensation for personal injury. *Id.* The Bureau of Prisons denied Ms. Simmons's claim on February 15, 2018. *Id.*, Attach. 12 at ECF p.5.

## II. LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *S. Calif. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

1  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, by "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324–25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Anderson*, 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### III. DISCUSSION

#### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner challenging conditions of confinement first exhaust prison grievance remedies before filing an action in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

9

Accordingly, a prisoner who is confined in a federal prison, such as Ms. Simmons, must exhaust all available administrative remedies with the Bureau of Prisons ("BOP") before filing a *Bivens* action in federal court asserting constitutional violations. *Id.* at 524–25.

Failure to exhaust administrative remedies is an affirmative defense to a *Bivens* claim under the PLRA. *Jones v. Bock*, 549 U.S. 199, 216 (2007). To properly exhaust administrative remedies, a federal prisoner must comply with the BOP's deadlines and other critical procedural rules. *Woodford*, 548 U.S. at 90–91. Exhaustion is mandatory under the PLRA unless a prisoner can demonstrate that the administrative remedies were effectively unavailable. *Porter*, 534 U.S. at 524; *Sapp v. Kimbrell*, 623 F.3d 813, 821–24 (9th Cir. 2010) (describing limited circumstances in which remedies are deemed unavailable or exhaustion is otherwise excused); *Nunez v. Duncan*, 591 F.3d 1217, 1224–25 (9th Cir. 2010). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc). A motion for summary judgment under Rule 56 is the appropriate procedure to determine, if the record permits, whether administrative remedies have been exhausted under the PLRA. *Id.* at 1168.

Whether the exhaustion requirement is met depends on compliance with the applicable prison grievance program. *Jones*, 549 U.S. at 218. The BOP has established an administrative remedies program for prisoners in federal custody. 28 C.F.R. §§ 542.10-542.16. BOP regulations set out the following grievance process for prisoners seeking administrative remedies relating to conditions of their confinement: A prisoner normally must present her complaint informally (BP-8 form) to prison staff. 28 C.F.R. § 542.13. If the informal complaint does not resolve the matter, the prisoner may make an "Administrative Remedy Request" (BP-9 form) to the prison Warden within 20 calendar days of the incident giving rise to the request, unless that deadline is extended. 28 C.F.R. § 542.14. If a prisoner is dissatisfied with the Warden's response to her complaint, she may appeal to the Regional Director (BP-10 form) within 20 calendar days of receiving the Warden's response, absent an extension of time. 28 C.F.R. § 542.15. If the prisoner is dissatisfied with the Regional Director's response, she may appeal to the BOP's General Counsel (BP-11 form) within 30 calendar days of receiving the Regional Director's response, absent an extension

of time. *Id.* The regulations provide time limits for the Warden, the Regional Director, and the General Counsel to respond to prisoner complaints. 28 C.F.R. § 542.18. If the prisoner does not receive a timely response to her request or any appeals, the absence of a response may be deemed a denial, and the prisoner may proceed to the next step of the process. *Id.*

In considering defendants' motion for summary judgment that Ms. Simmons failed to exhaust available administrative remedies before filing this action, the Court considers the evidence in the light most favorable to Ms. Simmons. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Ms. Simmons does not dispute that she filed only three administrative remedy requests (BP-9 forms) that concern matters relating to this action. *See supra* Section I.D. Ms. Simmons also does not dispute that she was advised of the Warden's response to each request, and that she did not appeal any of those responses to the Regional Director or to the General Counsel. *Id.*

In her verified complaint, Ms. Simmons says "[p]ursuing such remedies would [have] been futile or unable to afford plaintiff the relief she seeks." Dkt. No. 1 at ECF p.2. And in her opposition to defendants' summary judgment motion, she suggests that prison officials failed to respond to her grievances. Dkt. No. 35 at 8. However, the only evidence Ms. Simmons cites is Mr. Castillo's failure to respond to her informal written and electronic message requests concerning her administrative detention in the SHU. *Id.* She does not explain why she failed to submit a formal complaint (BP-9 form) to the Warden regarding this matter, or why she failed to proceed with appeals with respect to this or any other complaints. In addition, none of the three administrative remedy requests encompasses the allegations that underlie Ms. Simmons's Eighth Amendment excessive force claim relating to the cell door incident on August 15, 2017. *See* Dkt. No. 29-1 ¶ 11, Attachs. 5, 8, 9. To the extent Ms. Simmons contends that following the BOP grievance process would be futile, the Court notes that a prisoner may not avoid the exhaustion requirement simply because she feels her request for a remedy will be denied by prison officials or is futile for some other reason. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

On July 1, 2019, well after briefing in this matter was completed, Ms. Simmons filed a "Motion to Show Cause Why Exhaustion of Administrative Remedy Is Futile or Unable to Afford Petitioner's Relief She Seeks." Dkt. No. 41. Defendants object that Ms. Simmons's motion is

improper under the Civil Local Rules of this Court and request that the Court disregard it. Dkt. No. 42. Defendants are correct that the Local Rules prohibit the submission of additional briefing after the filing of a reply absent leave of Court, which Ms. Simmons did not obtain. Civ. L.R. 7-3(d). However, as Ms. Simmons is proceeding *pro se*, and because the Court may not find that Ms. Simmons failed to exhaust available administrative remedies as to some or all of her claims if there are disputed issues of fact on that point, the Court will consider Ms. Simmons's late submission for the limited purpose of assessing whether the matters raised in that submission bear on the exhaustion issues presented for decision, and if so, whether the interest of justice would be served by permitting the parties to submit further evidence or briefing.

In her July 1, 2019 submission, Ms. Simmons argues that, as a general matter, prison officials repeatedly reject her grievances and those of other prisoners and often find technical reasons to reject them, rather than responding to the grievances on the merits. Dkt. No. 41. She does not include any evidence, argument, or explanation about any grievances related to her claims in this action, but instead cites as examples grievances filed in March and April of 2019, well after the events at issue here. *Id.* The Court concludes that this submission does not contain any additional evidence that Ms. Simmons exhausted her administrative remedies, or that the administrative remedies provided by BOP regulations were unavailable to Ms. Simmons with respect to the claims at issue in this case.

Having considered the evidence in the record in the light most favorable to Ms. Simmons, the Court concludes that there is no genuine dispute of material fact and that defendants are entitled to summary judgment on their affirmative defense of failure to exhaust administrative remedies. Because Ms. Simmons's failure to exhaust bars this matter from proceeding on any of the constitutional claims raised in this action, the Court need not address the merits of defendants' Rule 12(b)(6) motion or their other grounds for summary judgment. *See Jones*, 549 U.S. at 212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

### B. Federal Tort Claims Act

One other matter deserves attention. In her complaint, under the heading "Exhaustion of

Legal Remedies," Ms. Simmons asserts:

> Plaintiff used the prisoner tort claim procedure available at FCI-Dublin to try and solve the problem. On 11/30/17 plaintiff presented the facts relating to this complain[t]. On 2/15/18 plaintiff Joyce Simmons was sent a response saying that the grievance had been denied. On 04/07/18 plaintiff filed her Section 1983 complaint.

Dkt. No. 1 at ECF p.13. The Federal Tort Claims Act ("FTCA") provides a remedy for acts or omissions by federal employees that constitute torts under state law. *See* 28 U.S.C. § 1346. While Ms. Simmons may not pursue her constitutional claims under the FTCA, some of the same conduct she alleges in support of those claims may constitute a tort actionable under the FTCA. The record reflects that Ms. Simmons submitted an administrative tort claim concerning the cell door incident to the Regional Director, which was denied on February 15, 2018. Dkt. No. 29-1 ¶ 14, Attach. 12.

Defendants correctly observe that Ms. Simmons's administrative FTCA claim does not satisfy the PLRA's exhaustion requirements, and Ms. Simmons complaint asserts only constitutional violations. *See* Dkt. No. 29 at 15 (citing cases). However, in screening her complaint under 28 U.S.C. §1915A(a), the Court did not consider whether Ms. Simmons's complaint should be construed as including a tort claim under the FTCA. *See* Dkt. No. 14. As the Court has an obligation to liberally construe *pro se* pleadings, the Court is reluctant to dismiss the entire action on exhaustion grounds when Ms. Simmons may be able to sustain a claim under the FTCA that is not subject to the PLRA exhaustion requirements that have been briefed to the Court. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In these circumstances, the Court concludes that the interests of justice are served by affording Ms. Simmons an opportunity to file an amended complaint to attempt to plead a claim under the FTCA. Fed. R. Civ. P. 15(a)(2).

**IV.    CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to defendants' affirmative defense of failure to exhaust administrative remedies. Accordingly, Ms. Simmons's *Bivens* claims are dismissed on that basis.

In the interest of justice, Ms. Simmons may amend her complaint to attempt to state a claim under the FTCA. However, she may not amend her complaint to add any other claims, absent prior leave of Court. If Ms. Simmons chooses to amend her complaint to assert an FTCA claim, she must file her amended complaint no later than 30 days from the date of this order. The amended complaint must include the caption and civil case number used in this order, Case No. C 18-02193 VKD (PR), and the words "AMENDED COMPLAINT" on the first page.

Failure to file an amended complaint in the time provided will result in the dismissal of this action without further notice to Ms. Simmons.

**IT IS SO ORDERED.**

Dated: September 27, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge